<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GUY DEL GIUDICE, individually and on behalf of all those similarly situated ,      : <br>      : <br>      : <br> Plaintiff,     : <br>      : <br> v.     : <br>      : <br> S.A.C. CAPITAL MANAGEMENT, LLC, et : <br> al.,      : <br>      : <br> Defendants.   : <br>      : | **Civil Action No. 06-1413 (SRC)** <br><br> **OPINION** |

**<u>CHESLER</u>**, District Judge

      This matter comes before the Court upon various motions for sanctions pursuant to Federal Rule of Civil Procedure 11 against three attorneys and against the Lead Plaintiff S. Mark Doctoroff ("Doctoroff") personally.  The attorneys against whom sanctions are sought are Thomas Gentile ("Gentile"), attorney for captioned plaintiff Guy Del Giudice ("Del Giudice"), Lead Counsel William B. Federman ("Federman") of the law firm of Federman Sherwood and Liaison Counsel Evan J. Smith ("Smith") of the law firm of Brodsky & Smith.  The primary motion for Rule 11 sanctions against these attorneys was filed by Defendants Banc of America Securities LLC ("BAS") and David Maris ("Maris"), a former BAS analyst [docket item no. 108].  Four separate "me too" motions for sanctions against the attorneys followed: by the

"S.A.C. Defendants"[1] [docket item no. 111]; by Defendants Arthur Cohen and Joseph Healey [docket item no. 113]; by the "Gradient Analytics Defendants"[2] [docket item no. 114]; and by Defendant Timothy McCarthy [docket item no. 118].[3]   The primary motion for Rule 11 sanctions against Doctoroff was also filed by BAS and Maris [docket item no. 125], with separate motions for sanctions against Doctoroff filed by the S.A.C. Defendants [docket item no. 130]; by the Gradient Analytics Defendants [docket item no. 127]; by Cohen and Healey [docket item no. 138]; and by McCarthy [docket item no. 134].  All of these motions have been opposed. In addition, Lead Counsel Federman Sherwood and Liaison Counsel Brodsky & Smith have moved to withdraw as counsel for the Lead Plaintiff [docket item no. 107].

The Court held oral argument on January 20, 2009.  The Court has considered the papers filed and the arguments made by the attorneys against whom sanctions are sought and by Lead Plaintiff Doctoroff, through his individual counsel, Louis R. Miller of the firm Miller Barondess, appearing for Doctoroff in connection with the sanctions motion.  For the reasons discussed below, the Court sanctions Federman, Smith and Doctoroff and accordingly will dismiss the First Amended Class Action Complaint ("Amended Complaint") without prejudice.

---

[1] The "S.A.C. Defendants" are S.A.C. Capital Management, LLC; S.A.C. Capital Advisors, LLC; S.A.C. Capital Associates, LLC; Sigma Capital Management, LLC; S.A.C. Healthco Fund, LLC; and Steven A. Cohen.

[2] The "Gradient Analytics Defendants" are Gradient Analytics, Inc.; Camelback Research Alliance, Inc.; James Carr Bettis; Donn Vickrey; Pinnacle Investment Advisors, LLC; and Helios Equity Fund, LLC.

[3] The Court notes that the motions filed by Cohen and Healey, by the Gradient Analytics Defendants and by McCarthy state that they seek sanctions against Del Giudice, Gentile's client, rather than Gentile himself.  As the Court reads these movants' papers, the Gradient Analytics Defendants in fact seek sanctions against Gentile, and the other motions fail to specify how or on what basis Del Giudice should be sanctioned.

I.      BACKGROUND

The motions for Rule 11 sanctions revolve around the behind-the-scenes conduct of a non-party to this case - Biovail Corporation ("Biovail"), a Canadian pharmaceutical company, whose stock price is at the heart of this securities fraud action and two other civil actions.  The action at bar was filed on March 24, 2006 in the District of New Jersey by Guy Del Giudice on behalf of a putative class of sellers of Biovail stock against various hedge funds and securities analysts alleging claims for violations of Sections 10(b) and 20(a) of the Securities Exchange Act.  The Complaint alleged that Defendants[4] drove down the price of Biovail stock throughout 2003 by disseminating false information about Biovail's products and its business and accounting practices, including the publication of articles falsely implying that Biovail had bribed doctors to prescribe its newly launched blood pressure medication Cardizem LA.  (This action will hereinafter be referred to as the "Del Giudice action.")  The two other civil lawsuits closely related to the Del Giudice action were pending when the action at bar was filed.  First-filed, in 2003, was a securities fraud class action by Biovail shareholders against Biovail in the Southern District of New York, alleging that the Biovail stock price drop in 2003 was caused by Biovail's artificial inflation of the stock price through market misrepresentations and accounting fraud. (This action will hereinafter be referred to as the "Biovail securities action.") The Honorable Richard Owen presided over the Biovail securities action at all times relevant to the motions at bar.  Later, on or about February 22, 2006, Biovail filed in New Jersey state court an action

---

[4] When referring to all Defendants generally, the Court will use the collective label "Defendants."

against largely the same defendants who would be named in the Del Giudice action,[5] alleging a short-selling conspiracy in violation state RICO laws. (This action will hereinafter be referred to as the "RICO action.") Complicit in Biovail's manipulation and abuse of the judicial system are the Lead Plaintiff, Doctoroff, and three of the attorneys appearing in the New Jersey securities action before this Court. While this Court deals here only with the misconduct of these individuals with respect to the action at bar, exposing the improper nature of the pleadings they have filed in this action requires an overview of events relating to all three lawsuits.

The Court begins, as it must, with Judge Owen's entry of a stipulated protective order in the Biovail securities action on April 29, 2005 (the "Owen protective order"). The Owen protective order barred the parties to the Biovail securities action from using documents, materials or information covered by the order for any purpose other than the prosecution or defense of the Biovail securities action. Pursuant to the Owen protective order, Biovail obtained by subpoena thousands of documents from BAS. On February 22, 2006, Biovail filed the RICO action, basing many allegations in that complaint on information supplied in the documents BAS produced under the Owen protective order. About a month later, Gentile, attorney for plaintiff shareholder Del Giudice filed the Complaint in this action. The Complaint parroted the RICO action complaint almost verbatim, adding a federal securities fraud claim. Indeed, the Complaint stated that its was "[b]ased on the facts set forth in the publicly filed complaint in *Biovail v. S.A.C.* [the RICO action]."

---

[5] Notably, however, BAS itself was not named a defendant in the RICO action but its analyst Maris was.

While the Del Giudice action remained mostly dormant for the remainder of 2006, important developments were occurring in the Biovail securities action. BAS alerted Judge Owen to Biovail's use of the confidential documents in drafting and filing the RICO action complaint. In a written opinion and order dated January 26, 2007, Judge Owen found that Biovail had willfully violated the protective order by using BAS's documents to draft its RICO claims. In addition to ordering the return of the BAS documents, Judge Owen ordered Biovail to redact from the RICO complaint any allegation referencing a confidential BAS document or based on information solely derived from documents covered by the Owen protective order. Judge Owen specifically notified this Court of his determination that Biovail's RICO complaint was a product of Biovail's violation of the protective order and urged this Court "consider appropriate steps to protect [BAS]" from injury by further misuse of any of these documents or the information of which they are the sole source." (5/22/08 English Decl., Ex. B.) (The Court will refer to Judge Owen's January 26, 2007 order as the "Owen sanctions order.")

Promptly after Owen sanctions order was issued, counsel for BAS, on behalf of all Defendants in the Del Giudice action, wrote to Gentile, who had filed the initial Complaint on behalf of Del Giudice, and to Federman and Smith, who had been appointed Lead Counsel and Liaison Counsel, respectively, for Lead Plaintiff Doctoroff.[6] Defendants' January 30, 2007 letter

---

[6] Though this securities fraud action was initiated by Del Giudice, he did not seek appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (The PSLRA, which applies to private actions brought under the Securities Exchange Act, such as the Del Giudice action, establishes a procedure for the appointment of a lead plaintiff in private class action suits. 15 U.S.C. § 78u-4(a)(3).) By Order dated June 26, 2006, the Court appointed S. Mark Doctoroff as Lead Plaintiff for the Class, pursuant to the PSLRA. It also approved the law firm Federman Sherwood as Lead Counsel for the Class and the firm Brodsky & Smith as Liaison Counsel for the Class.

advised counsel of Judge Owen's findings and included a copy of the Owen sanctions order.  The

letter pointed out that, as the document itself indicates, the Complaint in the Del Giudice action

is based on the RICO complaint Judge Owen had found offended his protective order.

Defendants accused Gentile, Federman and Smith of violating their Rule 11 obligations and,

citing the tainted nature of the Complaint's allegations, demanded immediate withdrawal of the

Complaint.  The Complaint was not withdrawn.  Instead, on January 31, 2007, Lead Plaintiff,

through his counsel Federman and Smith, filed the Amended Complaint.  The Amended

Complaint amplified its allegations to charge some additional wrongdoing but retained the

original Complaint's allegations regarding Defendants' hand in driving down the price of Biovail

stock through deliberate dissemination of misinformation.

On February 5, 2007, this Court held a telephone conference on the record to address the

Owen sanctions order.  The Court ordered the Lead Plaintiff to demonstrate the source of

information for all allegations of the Amended Complaint.  The Court ordered Plaintiff "in

particular, [to] demonstrate that the source for those allegations was not tainted by a violation of

Judge Owen's protective order in his Biovail case."  (5/22/08 English Decl. Ex. C, at 18:22-24.)

These directives were memorialized in the Court's Order entered on the docket on February 26,

2007 [docket item no. 69].

In response, Doctoroff conceded that "[t]he substantive allegations of the original

Complaint are based almost exclusively on the complaint filed by Biovail in [the RICO action].

Thus, a substantial portion of the allegations of the Amended Complaint are derived from the

Biovail Complaint [in the RICO action] . . . ."  (Plaintiff's Response to Court's February 26,

2007 Order, at 3-4. [docket item no. 88])  In his submission to the Court, Lead Plaintiff cited

Biovail's RICO complaint as a source of 128 of the Amended Complaint's 143 paragraphs containing factual allegations and the sole source for 88 of those allegations.  Lead Counsel and Liaison Counsel defended the propriety of the Amended Complaint by distinguishing their role in this action from Gentile's: he filed the initial Complaint, allegedly without investigation, whereas Doctoroff and his counsel had become involved in the case at a later time pursuant to the PSLRA lead plaintiff provisions.  They maintained that all the information underlying the Amended Complaint was in the public domain - by virtue of press releases and news reports as well as by virtue of the pleadings filed in the Biovail securities action and the RICO action - and that Doctoroff was therefore free to prosecute the Del Giudice action on that basis.  Doctoroff and Class Counsel stated, moreover, that many of the Amended Complaint's allegations do not concern BAS or Maris, and therefore do not implicate the Owen protective order in any way. Those that do are salvaged, according to Doctoroff's response, because the RICO action complaint was a matter of public record.

While the justification of this action was being developed, Judge Owen had initiated a hearing in the New York securities action sparked, at least in part, by knowledge that Biovail was seeking to obtain through subpoena in the RICO action the documents that Judge Owen had ordered returned.  The nine-day evidentiary hearing he conducted revealed further information about how the confidential information from the BAS documents came to appear in the Del Giudice Complaint.  In relevant part, the hearings confirmed that the Complaint was not prepared by Del Giudice's attorney, Gentile, but rather it was drafted by Biovail's counsel at Biovail's. Biovail's counsel, moreover, identified a shareholder to serve as the plaintiff in the Del Giudice action.  They sent Gentile the Complaint, which Gentile filed hours after receiving it via e-mail,

without meeting his Biovail-selected client, reviewing documents underlying the Complaint or interviewing witnesses regarding the conduct alleged.  The Del Giudice Complaint was the first securities fraud class action complaint Gentile had ever filed.  Gentile admitted he made no substantive changes to the document he received, other than to remove a reference to an investigation on which the allegations were based.  He further admitted that he learned after filing the pleading that the Complaint was based on documents subject to the protective order and that had he known that at the time, he would not have filed the Complaint.

Federman and Smith, in their brief in opposition to the sanctions motions, stress the contrast between Gentile's pre-filing conduct and the investigation they conducted before filing the Amended Complaint.  They state that they conducted extensive internet research to learn as much as possible about the facts underlying the Complaint, and they also reviewed the RICO action complaint and documents electronically filed in connection with that action (which had been removed to this Court, but has since been remanded).  They detail a meeting between Federman and Stuart W. Emmons, both of the Federman Sherwood law firm, and Biovail's counsel, Kasowitz, Benson, Torres & Friedman, LLP (the "Kasowitz firm") at the Kasowitz firm's New York office on September 20, 2006.  During this meeting, which lasted several hours, and in a subsequent telephone conversation, Lead Counsel and Biovail's counsel discussed their cases.  Biovail's counsel represented to Lead Counsel that the allegations of a short-seller conspiracy set forth in the RICO action complaint were the product of a 16-month investigation by the Kasowitz firm.  While they discussed the findings of the investigation and the evidence relating to some of the Defendants, they did not discuss the evidence underlying the allegations against BAS and Maris.  Biovail's counsel explained to Federman and Emmons that most of the

factual allegations in the RICO complaint against BAS and Maris were derived from documents produced by BAS in the Biovail securities action pursuant to a protective order.  Thus, the attorneys agreed not to discuss the documents, and Biovail's counsel informed Federman and Emmons that they could not turn over a copy of those documents.  Additionally, with respect to pre-filing investigation, Federman's and Smith's brief points to two media reports: a segment that aired on the televison program "60 Minutes" on March 26, 2006 regarding the alleged short-seller conspiracy against Biovail and a March 26, 2006 New York Times Article.  The "60 Minutes" piece focused on information provided by three former employees of Camelback, a stock analysis firm now known as Gradient Analytics (a Defendant in this action); the New York Times article included information provided by the former Camelback employees and by the allegations of the RICO action complaint.

In or about September 2007, shortly after the conclusion of Judge Owen's hearing, Biovail agreed to release BAS and Maris from all claims that arose or could arise from the BAS documents covered by the Owen protective order.  Biovail withdrew its claims against BAS and Maris in the New Jersey RICO action.  In or about December 2007, Biovail settled the Biovail securities action,[7] and then months later settled a similar securities fraud class action in Canada.

On March 24, 2008, the SEC commenced a civil enforcement action against Biovail and officers of the company alleging that Biovail had, among other things, filed false financial statements over the period of 2001 to 2003 and artificially inflated its stock price.  The same day, the SEC announced that Biovail had entered into a consent decree agreeing to pay a $10 million

---

[7] On December 11, 2007, plaintiffs' attorneys in the New York securities action announced that Biovail had agreed to pay $138 million to settle the case.

fine to settle the charges.  Finally, on May 16, 2008, Biovail announced it had agreed to plead guilty to criminal charges of paying doctors in 2002 and 2003 to buy Cardizem and to pay a $24.6 million fine in connection with that charge.

On April 25, 2008, Defendants BAS and Maris served upon Gentile, Federman and Smith a motion for Rule 11 sanctions.  Their letter addressed to Federman, and copied to Smith, Gentile and other counsel, specifically advised that BAS and Maris took the position that Gentile, Federman and Smith had violated Rule 11 and notified that unless the Amended Complaint was withdrawn by May 16, 2008 (21 days from the date of the notice), BAS and Maris would file a motion for Rule 11 sanctions.  Lead Plaintiff Doctoroff and his counsel did not voluntarily dismiss the Amended Complaint.  Instead, on May 16, 2008, Lead Counsel Federman and Emmons, from the law firm of Federman Sherwood, and Liaison Counsel Smith, of the firm Brodsky & Smith, filed a motion to withdraw as counsel.  (A corrected version of the motion was filed on May 22, 2008 and appears on the docket as item number 107.)  According to the attorneys seeking leave to withdraw, their motion "was precipitated by a difference of opinion between Counsel and Lead Plaintiff as to the best way to proceed in this action at this time in light of the recent developments."  (Federman Opp. Br. at 13 n. 5.)  In particular, Federman Sherwood and Brodsky & Smith assert that since BAS and Maris gave them notice of their intent to file a motion for Rule 11 sanctions, and following Biovail's settlement of civil and criminal enforcement actions as detailed above, they "did not advocate and have not advocated the factual contentions of the Amended Complaint."  (Id. at 14.)  Neither Lead Plaintiff Doctoroff or other counsel have opposed the withdrawal motion.

On May 22, 2008, 27 days after they served counsel with the proposed motion, BAS and Maris filed their Rule 11 motion with the Court.  The other motions for Rule 11 sanctions against counsel were filed thereafter, following notice to Doctoroff and counsel as required by Rule 11.

On June 6, 2008, BAS and Maris served on Doctoroff a separate motion for Rule 11 sanctions against him personally.  Defendants later filed the various motions pertaining to Doctoroff.  Doctoroff secured his own counsel to defend against the Rule 11 sanctions motions against him.  He believes the case has merit and wishes to continue to prosecute the claim as Lead Plaintiff.

The Court held oral argument on the motions on January 20, 2009.  At the argument, counsel arguing on behalf of Federman and Smith acknowledged that while they wished to withdraw the Amended Complaint following service of the sanctions motion, their client Doctoroff disagreed.  Lead Counsel and Liaison Counsel felt that in light of Biovail's admissions of wrongdoing in the SEC enforcement action and guilty plea in a criminal action (both actions premised on Biovail's inflation of its stock price and its payment of kickbacks to physicians for prescribing Cardizem LA) the allegations of the lawsuit at bar (premised on deflation of the stock by hedge funds and analysts by, among other things, publishing false reports of this kickback scheme) could not be pursued.  Doctoroff argued that he nevertheless continues to believe in the merits of the case and requested that the Court not dismiss the action but rather allow him and new counsel - who would move to be appointed Lead Counsel - an opportunity to file a second amended complaint.

## II.    DISCUSSION

Defendants' motions for sanctions pursuant to Rule 11 concern three targets: counsel for Del Giudice (Gentile) who filed the initial Complaint but did not become Lead Counsel and did not file the operative Amended Complaint; Lead Counsel and Liaison Counsel for Lead Plaintiff Doctoroff (Federman and Smith, respectively); and Lead Plaintiff Doctoroff.  The Court will impose sanctions against Federman, Smith and Doctoroff.  It finds that the present posture of the action will not, however, support Rule 11 sanctions against Gentile.  Following a brief overview of the jurisprudence governing Rule 11 sanctions, the Court will give its reasons.

### A.    Federal Rule of Civil Procedure 11

Rule 11 imposes an affirmative duty on an attorney and/or a party to conduct a reasonable inquiry into the factual and legal bases of all claims before filing any document with the court.  Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 551 (1991); Bensalem Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1314 (3d Cir. 1994).   In relevant part, Rule 11 provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

FED. R. CIV. P. 11(b)(1)-(3).

In determining whether a party or attorney has violated the duties of Rule 11, the Court must apply an objective standard of reasonableness under the circumstances.  Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 92 (3d Cir.1988); see also Brubaker Kitchens, Inc. v. Brown, 280 F. App'x 174, 185 (3d Cir. 2008) ("It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court.").  The Third Circuit has held that "[a]n inquiry is considered reasonable under the circumstances if it provides the party with "an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact."  Bensalem Twp., 38 F.3d at 1314.

The reasonable inquiry requirement does not prevent an attorney from relying on representations made by another person.  Garr v. U.S. Healthcare, Inc., 22 F.3d 1274, 1278 (3d Cir. 1994).  Indeed, because a court must consider all material circumstances in evaluating the reasonableness of the inquiry, a court's determination of whether an attorney has conducted a reasonable inquiry may depend on whether the attorney necessarily depended on information supplied by another person.  Id. at 1278-79.  A filing attorney, however, may not rely solely upon the inquiry conducted by another attorney, as the Rule 11 duty of investigation is personal and non-delegable.  Pavelic & LeFlore v. Marvel Entm't Group, 493 U.S. 120, 126-27 (1989); Garr, 22 F.3d  at 1278, 1280; Greenfield v. U.S. Healthcare, Inc., 146 F.R.D. 118, 124 (E.D.Pa. 1993),

13

aff'd sub nom. Garr v. U.S. Healthcare, Inc., 22 F.3d 1274 (3d Cir. 1994).  Whether an attorney's inquiry was reasonable may also depend on the time available to investigate the facts and law. Garr, 22 F.3d at 1279.  An attorney with ample time to file a document may be expected to conduct a more thorough inquiry than an attorney working under pressing time constraints.  Id. Other factors that a court may consider in evaluating the reasonableness of the investigation required by Rule 11 are the necessity for reliance on a client for the underlying factual information, the plausibility of the legal position advocated and whether the case was referred to the signer by another member of the Bar.  Mary Ann Pensiero, Inc., 847 F.2d at 95.

Rule 11 authorizes a court "to impose an appropriate sanction" on an attorney and/or party found to have violated the obligations of the rule.  FED. R. CIV. P. 11(c)(1).  In this way, the rule seeks "to curb abusive litigation tactics and misuse of the court's process."  Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987).  The sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  FED. R. CIV. P. 11(c)(4).  Appropriate sanctions may include directives of a non-monetary nature, orders to pay a penalty into court, an award of attorneys' fees and costs, or even dismissal of a case.  FED. R. CIV. P. 11(c)(4); Gaiardo, 835 F.2d at 482; Greenfield, 146 F.R.D. at 129.

The matter of Rule 11 violations by a party and/or attorney may be raised by the Court on its own initiative or by motion.  FED. R. CIV. P. 11(c)(2) and (3).  If a party chooses to bring a motion for sanctions under Rule 11, it must first serve the motion on the party and/or attorney against whom sanctions are sought and then wait at least 21 days after service before filing the motion with the court.  FED. R. CIV. P. 11(c)(2).  This "safe-harbor" provision of Rule 11 permits the allegedly offending party or attorney an opportunity to withdraw the challenged pleading.  Id.

### B.      Thomas Gentile

Exercising its discretion, the Court will not impose sanctions on Gentile.  The Complaint he filed is no longer controlling in this case, as it has been superseded by the Amended Complaint filed on January 31, 2007 by other attorneys.  Gentile's client, Del Giudice, is not the Lead Plaintiff in this putative class action, and Gentile is not an attorney for the putative class. Gentile had no real opportunity to correct the wrongdoing of which the movants complain.  He cannot withdraw the offending document - the Amended Complaint - because neither he nor his client filed it, and the document Gentile did file on behalf of Del Giudice - the Complaint - has not been operative since January 31, 2007.  The Court finds that imposing sanctions on Gentile in spite of the impossibility of any corrective action on his part in response to Defendants' notice that they would seek Rule 11 sanctions would render the mandatory safe harbor provision of Rule 11 without force or effect.  Indeed, the rule forecloses a motion for sanctions if the offending party or attorney withdraws or corrects the challenged paper, claim, defense, contention or denial within the 21-day safe harbor period.  In re Shaefer Salt Recovery Inc., 542 F.3d 90, 99 (3d Cir. 2008).  A corollary principle of the mandatory safe harbor provision holds that "a Rule 11 motion cannot be made unless there is some paper, claim, or contention that can be withdrawn."  Ridder v. Springfield, 109 F.3d 288, 296 (6th Cir. 1997).  Thus, where as here, it is too late for the offending party to withdraw the challenged paper, because it has become inoperative, no sanctions under Rule 11 may issue.  Id. at 296-97; see also Barber v. Miller, 146 F.3d 707, 710 (9th Cir. 1998) (denying Rule 11 sanctions motion where offending complaint had long been dismissed, reasoning that imposing sanctions when offending party had no opportunity to withdraw claim would defeat purpose of rule's safe harbor).

15

The Court does not intend to communicate or in any way suggest that Gentile's conduct in connection with filing the Complaint passes muster under Rule 11.  Clearly, it does not. Gentile admittedly failed to conduct any independent investigation at all before filing the Complaint in this action - much less a "reasonable inquiry" of the facts alleged in support of the securities fraud claims asserted.  See Garr, 22 F.3d at 1280 (finding that attorneys who filed a complaint that replicated two other securities class action complaints violated Rule 11 by failing to examine materials underlying their complaint's allegations and claims).  He hastily filed the pleading he had no role in drafting, with no justifiable reason to rush.  See id. (observing that time available to investigate the facts and law bears on the reasonableness of the inquiry). Gentile conceded that had he known that the Complaint delivered to him by Biovail's attorneys asserted allegations derived from documents covered by another federal court's protective order, he would not have filed the Complaint that initiated the action at bar.

In short, in light of Gentile's inability to take advantage of the protection offered by Rule 11's safe harbor, the Court holds that the Rule 11 motion for sanctions against him must be denied.

## C.    William Federman and Evan Smith

There is no dispute that Federman and Smith copied the RICO complaint's factual allegations and filed the Amended Complaint without personally investigating the basis for the allegations.  They themselves identify the RICO action complaint as the sole source of more than half of the Amended Complaint's factual allegations.  Their pre-filing investigation consisted of discussions with Biovail's attorneys about the RICO case, on which the instant securities lawsuit was modeled.  Federman and Smith admittedly did not review the documents on which the

16

allegations against BAS and Maris were based because, as Federman and Smith explain,

Biovail's counsel advised Lead Counsel that those documents were produced by BAS in the New

York securities action pursuant to a protective order.  The Third Circuit has held that the attorney

signing a pleading "has a 'personal, nondelegable responsibility' to comply with the requirements

of Rule 11".  Garr, 22 F.3d at 1278 (quoting Pavelic & LeFlore, 493 U.S. at 126).  One attorney

cannot rely solely on another's pre-filing investigation.  Id. at 1277-79.

      Filing the Amended Complaint, which alleges securities fraud, in reliance on the

investigation presumably conducted by Biovail's attorneys in connection with Biovail's RICO

action suffices on the facts of this case to draw sanctions.  Pavelic & Le Flore, 493 U.S. at 125-

26;  Garr, 22 F.3d at 1280.  Indeed, in Greenfield, the United States District Court for the Eastern

District of Pennsylvania found the pre-filing inquiry of two attorneys, who had relied on the

investigation conducted by another attorney and on one Wall Street Journal article before filing a

complaint on behalf of Scott and Patricia Garr, to be unreasonable for purposes of their Rule 11

duties.  Greenfield, 146 F.R.D. at 126-27.  As in this case, the attorneys who breached Rule 11

had copied the complaint they filed for the Garr plaintiffs from a complaint prepared and filed in

a separate lawsuit by another attorney.  Id. at 121.  One of the sanctions the district court imposed

was to dismiss the Garr complaint without prejudice.  Id. at 129.  On appeal, the Third Circuit

affirmed.  Garr, 22 F.3d at 1280.

      The misconduct by Federman and Smith, however, goes beyond their lack of a reasonable

independent investigation.  Knowing that the RICO complaint was drafted by Biovail's attorneys

in willful violation of Judge Owen's protective order, Federman and Smith nevertheless

proceeded to file the Amended Complaint.  By letter dated January 30, 2007, counsel for BAS

and Maris advised them of Judge Owen's ruling with regard to Biovail's misuse of the

information obtained in the Biovail securities action before him and even included a copy of the

Owen sanctions order with their letter to Doctoroff's counsel.  The Owen sanctions order

unequivocally censures Biovail's conduct, orders it to redact from the RICO action complaint

allegations solely based on Biovail's violation of the protective order and identifies the Del

Giudice action as similarly tainted in that it mirrors the RICO action complaint.  Apparently,

Federman and Smith, and their client Doctoroff, believed this Court would countenance the

prosecution of claims based on information made public as a result of a deliberate violation of

another court's order.  They were wrong.

Counsel defends the filing of the Amended Complaint on the absurd ground that the

claims and allegations are derived from information in the public domain by virtue of the RICO

complaint.  This argument insults this Court and, moreover, mocks the judicial system.  When

they filed the Amended Complaint with this Court, they were fully aware of the Owen sanctions

order.  When pressed by this Court to identify with regard to each of the Amended Complaint's

allegations a source of information with no connection to the RICO complaint, Lead Plaintiff and

his counsel were simply unable to do so.

The Rule 11 violation committed by Federman and Smith was complete when they filed

the Amended Complaint.  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990).  It has

not been cured.  They make a belated attempt to rectify the wrong by arguing that, in what

represents an insurmountable difference of opinion with their client Doctoroff, they have ceased

to advocate the Amended Complaint's claims following Biovail's settlement of civil enforcement

proceedings by the SEC and its guilty plea to criminal charges and, accordingly, have moved to

withdraw as Doctoroff's counsel.  This assertion, without a corresponding withdrawal of the offending document, does not expunge their initial wrongdoing in filing the Amended Complaint and, indeed, their ongoing wrongdoing in continuing to press claims based on tainted allegations long after the Owen sanctions order.  Counsel's insinuation that their hands are tied with regard to their ability to take corrective action, due to their disagreement with their client as to how to proceed, is similarly unavailing.  See, e.g., Gold v. The Last Experience, No. 97 Civ. 1459, 1999 WL 156005, at *4 (S.D.N.Y. Mar. 22, 1999) (imposing Rule 11 sanctions on withdrawing plaintiff's attorney following failure to withdraw lawsuit after receiving adequate safe-harbor notice, finding that withdrawal as counsel did not absolve attorney of liability under Rule 11). No authority has been presented to this Court under which counsel might be protected from sanctions without taking the corrective action contemplated by Rule 11a's safe harbor.

Apart from clearly failing to investigate the factual allegations themselves, Federman and Smith scoffed at the authority of the United States District Court for the Southern District of New York.  This abuse of the judicial process falls squarely within the conduct Rule 11 prohibits and seeks to deter by authorizing sanctions.  Teamsters Local Union No. 430 v. Cement Express, Inc., 841 F.2d 66, 68 (3d Cir.1988) (holding that Rule 11 sanctions are appropriate "only if the filing of the complaint constituted abusive litigation or misuse of the court's process.").  This Court believes that any sanction short of dismissing the Amended Complaint without prejudice would reward their misconduct.  As will be discussed in more detail below, Doctoroff is equally culpable under Rule 11, particularly in light of his adherence to the Amended Complaint.  His refusal to permit counsel to withdraw that pleading within the safe harbor period demonstrates a continuing violation of Rule 11.  Thus, the Court finds that the embarrassing conduct of the

attorneys together with Lead Plaintiff's abdication of his responsibilities to the class, under the

PSLRA, and to this Court as a litigant, warrant dismissal of the Amended Complaint.

Accordingly, the Court will grant Defendants' motions for Rule 11 sanctions insofar as

they target Lead Counsel Federman and Liaison Counsel Smith.  The Court will order dismissal

of the Amended Complaint without prejudice as the appropriate sanction.

### D.      Doctoroff

Parties, not just their attorneys, are bound by the obligations of Rule 11 and may likewise

be sanctioned for a breach of those obligations.  FED. R. CIV. P. 11(c)(1); Business Guides, Inc.,

498 U.S. 533, 541 (1991); Cohen v. Kurtzman, 45 F.Supp.2d 423, 436-37 (D.N.J. 1999)

(sanctioning attorney and client for failure to conduct reasonable pre-filing investigation).  Under

the rule, as amended in 1993, signature on a pleading is not the sole trigger of the rule's

obligations.  It states that the attorney or party makes certain representations to the Court "[b]y

presenting to the court a pleading, written motion or other paper – *whether by signing filing*

*submitting, or later advocating it . . . .* " FED. R. CIV. P. 11(b) (emphasis added).  Doctoroff's

argument that he should not be sanctioned because he did not sign the Amended Complaint is

therefore unavailing.[8]  For the same reasons discussed above with respect to his counsel,

Doctoroff, as the proponent of the Amended Complaint, is liable for the same lack of adequate

pre-filing investigation and prosecution of claims he knows are based on a deliberate violation of

Judge Owen's protective order.

---

[8] The Court notes that the Third Circuit cases he cites in support of his position that a
signature is required before Rule 11 may apply all pre-date the 1993 amendment.  See, e.g.,
Gaiardo, 835 F.2d at 484  ("The rule focuses on the act of signing the document as a certification
. . .").

Doctoroff's continuing prosecution of the Amended Complaint - exemplified by his refusal to withdraw the pleading as urged by Lead Counsel and Liaison Counsel - perpetuates the Rule 11 violation.  Rule 11 does not apply only at the filing stage.  It prohibits a party from insisting on a position when it becomes, in the course of the litigation, untenable.  Balthazar v. Atl. City Med. Ctr., 137 F. App'x 482, 490 (3d Cir. 2005) (citing FED.R.CIV.P. 11, Advisory Committee Note).  On this point, the Sixth Circuit has held that "[a]n attorney and the litigant have continuing obligation to review and reevaluate their pleadings, motions and other papers and upon discovery that such papers were without merit, to immediately dismiss the action at the risk of inviting the imposition of Rule 11sanctions."  Herron v. Jupiter Transp. Co., 858 F.2d 332, 336 (6th Cir. 1988).  As detailed above, the factual allegations of the Amended Complaint have a tainted origin and, as events following its filing confirm, are incompatible with Biovail's admission of guilt in a kickback scheme that the Amended Complaint accuses Defendants of falsely reporting and with Biovail's admissions, in connection with the settlement of the SEC enforcement action, of making false statements that inflated its stock price.

Moreover, as Lead Plaintiff in this action, Doctoroff bears a fiduciary obligation to the class.  In re Cendant Corp. Sec. Litig., 404 F.3d 173, 198 (3d Cir. 2005) (holding that in a PSLRA action, "the lead plaintiff serves as a fiduciary for the entire class.").  His position with respect to the validity of the claims he wishes to prosecute as Lead Plaintiff runs afoul of that obligation.  Though Doctoroff states that he continues to believe in the claims, he does not explain how he has come to the conclusion that they have merit.  When he became involved in the case, and agreed to seek the Court's approval to act as the Lead Plaintiff, he relied only on

Federman Sherwood's description of the case and his attorneys' representations about the merits of the claims.  Now, after those same attorneys have taken the position that the claims are no longer valid and have so advised Doctoroff, Doctoroff continues to advocate the claims without suggesting that he has exercised his fiduciary responsibility to determine, based on his own investigation, that the claims have continuing validity.

Only at oral argument does Doctoroff suggest that perhaps the claims, as pled in the Amended Complaint, lack merit, as indicated by his request that the Amended Complaint be dismissed with leave of the Court to file a further amended pleading.[9]  Doctoroff's representation that he wishes to proceed with the case on a different complaint seems to be an attempt to simultaneously disavow the pleading currently in effect and avoid potential statute of limitations problems that could arise were he to voluntarily dismiss the Amended Complaint and commence a new action.  The Court rejects his proposed solution.  Nothing other than Doctoroff's withdrawal of the offending pleading (within the now-expired safe harbor period) would cure the Rule 11 violation he has committed, and the Court will not spare him from sanctions based on his tactical preference.

----

[9] At oral argument, counsel appearing for Doctoroff personally in connection with the Rule 11 sanctions motion stated: "In this particular context, you can dismiss the old complaints but I don't want any part of them.  I want to be able to file a new complaint . . . That's all I ask. If I'm not prejudiced by virtue of the statute of limitations or something else, I am not  - - I'm not wrapping my arms around their complaint.  I want my own."  (1/20/09 Tr. Motions for Sanctions 53:24 - 54:7.)

**E.      Misconduct Warranting Dismissal of Action Under Rule 11**

The wrongdoing of Gentile, Federman, Smith and Doctoroff with regard to each one's role in prosecuting this action has been detailed, and the Court has given its reasons for imposing extraordinary Rule 11 sanctions against Federman, Smith and Doctoroff.  Nevertheless, the Court believes that its decision to impose the sanction of dismissal of the Amended Complaint without prejudice warrants further discussion as to why the circumstances of this case render any lesser sanction ineffective.  In particular, the Court wishes to expound on the general scheme of abuse of our judicial system, a scheme of which this lawsuit and these culpable individuals were but one aspect.

The record before the Court suggests that these proceedings and the RICO action proceedings were all part of a choreographed strategy by Biovail and its attorneys designed to constitute a counterattack against the Biovail securities action.  The record demonstrates that highly experienced professionals, i.e., the attorneys who filed and pursued the Del Giudice action and the RICO action, were ready and willing tools of Biovail.  They ignored their professional and ethical obligations and aided Biovail for their own benefit.  The proceedings before this Court in connection with the Rule 11 sanctions motions have given the impression that all the parties to this strategy believe that they can avoid responsibility simply by pointing at each other, and ultimately at Doctoroff, who argues that he did not actually "sign" anything but, as he would have the Court accept, merely lent his name and position as a shareholder to further the suit. This Court refuses to accept that parties and attorneys can engage in such unabashed manipulation of our federal and state courts and yet continue to pursue a lawsuit which was filed

23

without even the pretense of a factual investigation by the filer.  Our judicial system is not quite so impotent.

The Court recognizes that it is a rare situation in which a case is dismissed as a Rule 11 sanction without an evaluation of the substantive merit of the claims.  Indeed, this Court has rejected such efforts on numerous occasions in other cases.  Here, however, the conduct is so egregious, and the futility of imposing alternate sanctions is so clear, that dismissal is the only appropriate sanction.  Moreover, the suitability of this disposition is highlighted by the fact that Messrs. Federman and Smith themselves ultimately recognized the inappropriateness of continuing the litigation.  They would have dismissed the claims following the safe-harbor notice provided by Defendants if not for Doctoroff's conclusion that the Amended Complaint should not be dismissed, a conclusion he reached, as far as the record demonstrates, without having reviewed any of the support for the Amended Complaint's allegations and claims.

If Doctoroff and his personal counsel believe that they have viable claims against any of these Defendants, they are perfectly free to file them, subject of course to the constraints of Rule 11 and the applicable statute of limitations.  What they will not be permitted to do is to piggyback their claims onto the wholly tainted and discredited Amended Complaint currently before the Court.

Therefore, the Court will dismiss the Amended Complaint in its entirety without prejudice and without leave to amend.

**III.    CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part the motions for Rule 11 sanctions against Gentile, Federman and Smith filed by BAS and Maris and by the SAC Defendants.  The motions for sanctions against Del Giudice, Federman and Smith filed by Cohen and Healey, McCarthy and the Gradient Analytics Defendants will also be granted in part and denied in part.  Defendants' various motions for Rule 11 sanctions against Doctoroff will be granted.  The Court will order the Amended Complaint dismissed without prejudice as a sanction against Lead Plaintiff, Lead Counsel and Liaison Counsel.  An appropriate form of Order will be filed together with this Opinion.


           s/ Stanley R. Chesler
        STANLEY R. CHESLER
        United States District Judge

DATED: February 19, 2009

25